**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **JEFFREY JAMES DEAN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | Civil No. ELH-17-2708 |
| | * | |
| **THE BERLIN FIRE COMPANY,** | * | |
| | * | |
| **Defendant,** | * | |
| | * | |
| | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Jeffrey James Dean filed suit against his former employer, the Berlin Fire Company ("BFC"), located in the Town of Berlin, Maryland. ECF 1 (Complaint); ECF 11 (Amended Complaint). Dean asserts claims for hostile work environment (Count I), as well as harassment and retaliation (Count II), in violation of Title VII of the Civil Rights Act of 1964, codified, as amended, at 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Dean appended numerous exhibits to his suit. He seeks both compensatory and punitive damages.

BFC has moved to dismiss plaintiff's Amended Complaint (ECF 14), pursuant to Fed. R. Civ. P. 12(b)(6), supported by a memorandum of law (ECF 14-2) (collectively, the "Motion"). According to BFC, the suit is untimely. Dean opposes the Motion (ECF 15, "Opposition") and has submitted several exhibits. BFC has replied. ECF 16.

No hearing is necessary to resolve the Motion. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, I must grant the Motion.

# I.    Factual and Procedural Background[1]

In October 2005, BFC hired Dean as a paramedic/firefighter.  ECF 11, ¶ 4.  During his employment, Dean worked with several senior BFC officials, including then-Chief Byron Trimble; Assistant Chief Derrick Simpson; Emergency Medical Services ("EMS") Supervisor Norris Phillip Donohue, Sr.; and "President David Fitzgerald."  *Id.*[2]  Dean alleges that, over the course of his employment, he witnessed ongoing racial, sexual, and other types of harassment by senior BFC officials, directed at several of his coworkers, including the use of derogatory racial epithets.  *Id.* ¶¶ 4-6.  Moreover, he claims that he, too, became a victim of harassment and retaliation.  *Id.* ¶¶ 8, 9.

On September 12, 2011, Dean was assigned a new paramedic partner, Zachery Tyndall.  *Id.* ¶ 7.  Tyndall informed Dean that he had experienced "years of non-consensual physical sexual contact, harassment, retaliation and discrimination" by Trimble, Simpson, Donohue, Fitzgerald, and other BFC employees, "based upon their perception of Tyndall's sexual preference as homosexual."  *Id.* ¶¶ 8, 11.  Following Tyndall's reassignment, Trimble and other BFC officials also began to harass Dean by asking questions such as: "Where is your homo partner?  Where's the little faggot?"  *Id.* ¶ 10 (internal quotation marks omitted).

Further, Dean alleges: "Throughout 2011, Dean began feeling pressure from Donohue, Trimble, Simpson and others . . . to join in their harassment of Tyndall, which he refused."  *Id.*  As the harassment of Tyndall increased in severity, Dean and Tyndall repeatedly asked Trimble, Simpson, Fitzgerald, and Donohue to stop their behavior, to no avail, and complained to persons

---

[1] As discussed, *infra*, given the posture of this case, I must assume the truth of the facts alleged by Dean.  However, I may consider the exhibits incorporated in or integral to the suit, and I may take judicial notice of public records.

[2] Plaintiff does not identify the name of the organization for which Fitzgerald was "President."

in leadership, including the President of the Board of Directors, John Holloway. *Id.* ¶¶ 12-15. On February 24, 2012, Dean and Tyndall complained of the ongoing harassment to the Mayor and to the Human Resources Director of the Town of Berlin (the "Town"). *Id.* ¶ 16. The Town subsequently conducted an investigation, which resulted in Donohue's dismissal. *Id.*

Following the investigation, Dean alleges that BFC officials harassed, isolated, and disciplined him in retaliation for his participation. *Id.* ¶¶ 16-18. Dean was "chastised for miniscule matters and was written up for formal discipline for manufactured offenses or for something so minor as letting leaves blow into the engine bay of the Firehouse." *Id.* ¶ 17. Additionally, Fitzgerald called the Berlin Police Department to request that it investigate Dean. *Id.* ¶ 18. Dean also alleges that, during an inventory of controlled substances following an ambulance call, he discovered that someone hid a narcotics vial in a container for needles, "where it could only have been deliberately placed by someone with access to the firehouse and the ambulance." *Id.* After the Town cut funding for BFC in response to its failure to change its policies and correct its leadership's misconduct, BFC officials further "increased their threats and intimidation" toward Dean. *Id.* ¶ 19.

As a result of the ongoing harassment, Dean suffered significant health problems, including nausea, anxiety attacks, severe reflux, and acute esophagitis. *Id.* ¶ 20. In October of 2012, Dean's physician directed Dean to take a leave of absence from work until January 21, 2013. *Id.* While Dean was on medical leave, the Maryland Institute for Emergency Medical Services Systems initiated another investigation into BFC's alleged misconduct, for which Dean provided testimony. *Id.* ¶¶ 26-27.

Upon receiving medical clearance to return to work, Dean informed Fitzgerald that he would like to be placed on the active duty roster. *Id.* ¶ 28. Initially, Fitzgerald ordered Dean to

complete a "skills assessment" before returning to work, but later "retreated from that position and instead told him he would have to have a 'psychological evaluation.'" *Id.* Dean subsequently underwent a four-hour psychological evaluation with Michael Finegan, Ph.D. However, Dr. Finegan refused to proceed after discovering that Dean's treating physician already cleared him to return to work. *Id.* ¶ 29. Several weeks later, Dean underwent a second psychological evaluation with a psychiatrist, "Dr. White," who found that Dean was psychologically fit to return to work. *Id.* ¶ 30.

In addition to the mental health evaluation, Fitzgerald required Dean to report to Talbot County EMS for training on March 12, 2013, during which Dean would "precept" and complete twelve Advanced Life Support calls before returning to BFC. *Id.* ¶ 31. Dean found Fitzgerald's requirements unusual, because: (1) Talbot County EMS was 90 minutes from Berlin, and (2) "the requirement of precepting at another department had never been imposed on any prior member." *Id.* ¶ 32. Despite his concerns, Dean reported on March 12, 2013. *Id.* ¶ 33. That same day, BFC fired Tyndall. *Id.*

On March 29, 2013, Dean completed his training at Talbot County EMS. *Id.* ¶ 35. Several days later, however, Dean was injured in a serious car accident that involved a fatality. *Id.* After consulting with his physician, Dean informed Fitzgerald that he would be out on medical leave until May 14, 2013. *Id.* ¶ 36. Shortly thereafter, in April of 2013, Fitzgerald informed Dean that he was terminated, "allegedly because the company needed to have its full-time life support providers available for EMS calls." ECF 11-2 at 2; *see also* ECF 11, ¶¶ 36, 58.

On August 27, 2013, Tyndall filed suit against BFC in connection with the above-referenced events. *Id.* ¶ 41; *see Zachery Tyndall v. The Berlin Fire Company, et al.*, Civil Case No. ELH-13-2496 ("*Tyndall*"). In *Tyndall*, both Tyndall and BFC were represented by the same

attorneys involved in this case. *Id.* ¶ 41. There, this Court denied BFC's motion for summary judgment. *See Tyndall*, ECF 60 (Memorandum Opinion); ECF 61 (Order). *Tyndal* subsequently settled in 2015. *See Tyndall* Docket.

In this case, Dean's counsel sent BFC's counsel a demand letter on August 2, 2016, offering to settle all claims against BFC for $875,000.00. ECF 11-1. At some point, BFC's attorney requested additional documentation regarding Dean's period of disability due to the auto accident. *See* ECF 11-2 at 1. By letter of November 28, 2016, Dean's attorney provided BFC's lawyer with further details and medical documentation. ECF 11-2.

On an unspecified date, Dean filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). ECF 11, ¶ 42. On February 23, 2017, the EEOC sent Dean a Notice of Right to Sue. *Id.* ¶¶ 40, 44; *see also* ECF 11-3. The Notice of Right to Sue provided that Dean's "lawsuit must be filed <u>WITHIN 90 DAYS</u> of [his] receipt of this notice; or [his] right to sue based on this charge will be lost." ECF 11-3 at 3.

On March 7, 2017, Dean's counsel sent BFC's counsel a letter. ECF 11, ¶ 45; ECF 11-4. He said, in part, ECF 11-4 at 2:

> The purpose of my correspondence is to inquire as to whether there is any reasonable expectation of resolution without the necessity of litigation. If your client is interested in mediation, please advise. If I do not hear from you with [sic] next 10 days I will assume that you do not and we will take appropriate action.

About ten days later, counsel for the parties spoke by telephone, and defense counsel "indicated a desire to mediate the matter." ECF 11, ¶ 46. Further, Dean alleges that, during that conversation or one "shortly thereafter," his lawyer provided defense counsel with the name of a proposed mediator. *Id.* ¶ 47. According to plaintiff, defense counsel "responded by telephone a

5

short time thereafter indicating that she had approval to mediate," but her client did not approve of plaintiff's proposed mediator. *Id.* ¶ 47.

In the conversation, defense counsel expressed approval of the federal magistrate who conducted settlement proceedings in *Tyndall*, and "had done such a good job" in obtaining the settlement. *Id.* In response, plaintiff claims his lawyer asserted that he could file suit "quickly" so as "to make one available," *i.e.*, a federal magistrate judge. *Id.* At that point, according to plaintiff, counsel for BFC "request[ed] that Plaintiff not file suit as she was confident the matter could be resolved in mediation." *Id.* Counsel for BFC then "indicat[ed] she would send other names [of mediators] after she spoke with her insurer and client." *Id.* ¶ 48. Significantly, plaintiff asserts that Dean's "counsel did not hear from [defense counsel] in response." *Id.* ¶ 48.

Dean's attorney emailed BFC's counsel on July 20, 2017, providing a list of proposed mediators. ECF 11, ¶ 48; ECF 11-5. He also said, ECF 11-5 at 2: "Please let me know your thoughts." Notably, defense counsel did not respond. ECF 11, ¶ 48.

Almost two months later, on September 12, 2017, Dean filed suit. Dean's counsel also sent an email to BFC's counsel on September 13, 2017, advising her that Dean "could wait no longer and was filing suit." ECF 11, ¶ 48; *see also* ECF 11-6.

In the Amended Complaint, Dean acknowledges that he filed suit more than ninety days after receipt of the right to sue letter. ECF 11, ¶ 40. He asserts, however, that the delay was "due to reliance upon the representations and conduct of Defendant through its counsel." *Id.* He notes that, as a result of the *Tyndall* case, counsel for the parties here "had a working relationship which resulted in resolution of claims arising out of the same factual universe." *Id.* ¶ 41. Moreover, plaintiff alleges that his attorney reasonably believed that BFC "intended to mediate the matter . . . . Had Plaintiff or counsel believed otherwise, Plaintiff would have filed suit at the

time of counsel's initial letter of March 7, 2017." ECF 11, ¶ 49. Further, Dean asserts that, "in light of the past dealings between counsel" in *Tyndall*, his counsel "reasonabl[y] relied upon the statements and representations" of defense counsel, including the request not to file suit. *Id.* ¶ 50.

## II.    Legal Standards

Defendant's Motion is predicated on Rule 12(b)(6). Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain well-pled facts, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Rosy deReyes v. Waples Home Park L.P.* ___ F.3d ___, 2018 WL

4344682, at *4 (4th Cir. Sept. 12, 2018); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, —— U.S. ——, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and

then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ); *see Six*

*v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Goines*, 822 F.3d at 166; *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979, 125 S. Ct. 479, 160 L. Ed. 2d 356 (2004).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also consider a document submitted by the movant, even if it was not attached to or expressly incorporated in a complaint. However, the document must be "integral to the complaint," and there can be "no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th

Cir. 2017), *cert. denied*, —— U.S. ——, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied* 565 U.S. 825 (2011); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." And, courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment. *See, e.g., Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[c]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."). Of import here, a court may also take judicial notice of its own records. *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).

In addition, the court may take judicial notice of the existence and contents of EEOC proceedings "if necessary to decide issues like exhaustion of administrative remedies[.]" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013). But, "it may not take judicial notice of the *truth* of matters outside the challenged pleading." *Id.* (emphasis in *Clarke*).

Dean submitted several exhibits with his Amended Complaint. *See* ECF 11-1 (letter of August 2, 2016, from Dean's counsel to BFC's counsel); ECF 11-2 (letter of November 28,

2016, from Dean's counsel to BFC's counsel); ECF 11-3 (February 23, 2017 EEOC Notice of Right to Sue); ECF 11-4 (letter of March 7, 2017, from Dean's counsel to BFC's counsel); ECF 11-5 (July 20, 2017 email from Dean's counsel to BFC's counsel); ECF 11-6 (September 13, 2017 email from Dean's counsel to BFC's counsel). Because these exhibits were submitted with the suit, and are integral to it, I may consider them without converting the motion to dismiss to one for summary judgment.

Additionally, BFC submitted several exhibits with its Motion. These include ECF 14-3 (Dean's Amended Complaint and attached exhibits); ECF 14-4 (Affidavit of [BFC's Counsel] Jo Anna Schmidt, and attached exhibits); and ECF 14-5 (Affidavit of [BFC's Counsel] Danielle E. Marone, and attached exhibits). Some of the exhibits are duplicates of exhibits that plaintiff appended to the suit. In any event, I decline to consider the defense affidavits, or any of the new exhibits attached to them. *See Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611.

With Dean's Opposition, Dean submitted the Affidavit of his attorney, James L. Otway. ECF 15-1. Otway's averments are largely the same as allegations contained in the Complaint, the truth of which I must accept in the context of addressing the Motion.

### III. Discussion

#### A.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, "prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, or retaliating against their employees for opposing or seeking relief from such discrimination." *Green v. Brennan*, ___ U.S. ___, 136 S. Ct. 1769, 1773-74 (2016); *see Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 233 (4th Cir. 2016); *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC, or a comparable state agency, before filing suit in federal court. 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *see also Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 161 (4th Cir. 2018). The charge must "describe generally the action or actions complained of," in order to provide the charged party with adequate notice. 29 C.F.R. § 1601.12(b); *see Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them."); *Balas v. Huntington Ingalls Indus.*, Inc., 711 F.3d 401, 407 (4th Cir. 2013). The "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

An aggrieved person must file a Title VII complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state. There is no claim here that plaintiff failed to comply with the exhaustion requirement.[3]

Upon receipt of a right-to-sue letter, an aggrieved individual must file suit within ninety days, as required by 42 U.S.C. § 2000e-5(f)(1). Plaintiff acknowledges that he failed to do so.

---

[3] The exhaustion requirement of Title VII functions as a jurisdictional bar in federal court. In *Balas*, 711 F.3d at 406, the Fourth Circuit said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies, and is generally barred from filing suit. *See, e.g., Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Failure to exhaust generally mandates dismissal. *See Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografo v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

**B.**

The ninety-day time limitation for filing a civil suit under Title VII is not a jurisdictional prerequisite. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *see also Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) ("If equitable tolling applies, . . . the time limits are not jurisdictional, but are rather in the nature of a statute-of-limitations defense."); *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000) ("[P]rinciples of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations."); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) ("Because the 180-day period is akin to a statute of limitations, rather than a jurisdictional prerequisite to filing suit, a plaintiff can obtain relief from it under the doctrines of equitable tolling and equitable estoppel."), *cert. denied*, 486 U.S. 1044 (1988). *See generally United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S. Ct. 1625 (2015) (detailing the development of equitable tolling in federal statutory interpretation and finding that equitable tolling may apply to the time bar for bringing suit against the federal government under the Federal Tort Claims Act).

Because a plaintiff's failure to timely file a civil action in a Title VII case is akin to a failure to comply with the statute of limitations, it "is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393. For example, in *Harvey v. City of New Bern Police Department*, 813 F.2d 652, 653 (4th Cir. 1987), the Fourth Circuit considered "whether the ninety day statutory period for filing an action" under § 2000e-5(f)(1) "commenced when the claimant's wife took delivery of the notice of the right to sue." The district court had granted the

defendant's motion for summary judgment because it could not find any "equitable grounds which would require tolling the filing period." *Id.* The Fourth Circuit affirmed, but said that in "a case such as the one at bar, district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." *Id.* at 654.

Similarly, in *Watts-Means v. Prince George's Family Crisis Center*, 7 F.3d 40 (4th Cir. 1993), the Court was presented with a question about when the ninety-day period under § 2000e-5(f)(1) was triggered. *Id.* at 42. After concluding that the plaintiff had not filed suit within the ninety-day period, as required, the Court applied an equitable tolling analysis. *Id.* (citing *Harvey*, 813 F.2d at 654).

The doctrines of equitable tolling and equitable estoppel derive from the notion "that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing her claim on time." *English*, 828 F.2d at 1049; *see Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002) ("The element common to both doctrines is some form of misconduct by the defendant."). Nevertheless, "[t]he Court applies equitable exceptions sparingly because the certainty and repose the [procedural] provisions confer will be lost if their application is up for grabs in every case." *Moret v. Geren*, 494 F. Supp. 2d 329, 337 (D. Md. 2007); *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 200 (4th Cir. 1990).

Equitable tolling "applies where a defendant, by active deception, conceals a cause of action," and the plaintiff reasonably relied on the misrepresentation in failing to file a timely charge. *Lekas*, 282 F.3d at 391 (citation omitted); *see Lawson v. Burlington Indus.*, 683 F.2d 862, 864 (4th Cir. 1982). In *Crabill v. Charlotte Macklenburg Bd. Of Educ.*, 423 Fed. App'x 314, 321 (4th Cir. 2011), in regard to equitable tolling, the Court said: "Equitable tolling is a

discretionary doctrine that turns on the facts and circumstances of a particular case." (Citations omitted); *see Walton v. Guidant Sales Corp.*, 417 F. Supp. 2d 719, 721-22 (D. Md. 2006).

Equitable estoppel "applies where . . . the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline," even though the plaintiff knows that it exists." *Moret*, 494 F. Supp. 2d at 338; *see English*, 828 F.2d at 1049. The doctrine of equitable estoppel will not toll a filing period "'unless the employee's failure to file in a timely fashion is the consequence of either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Moret*, 494 F. Supp. 2d at 338 (quoting *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir. 1982)).

## C.

Dean expressly concedes that "equitable tolling does not apply" here, because plaintiff "was aware of his right to sue." ECF 15 at 4. Instead, he relies solely on equitable estoppel. *Id.* Thus, I need only determine whether BFC is estopped by the conduct of its counsel from asserting that suit is barred because it was untimely filed.

In considering whether equitable estoppel is warranted, this Court must examine "the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights." *Felty v. Graves-Humphreys*, 785 F.2d 516, 519 (4th Cir. 1986) (citing *Naton v. California*, 649 F.2d 691 (9th Cir. 1981)). As indicated, equitable estoppel requires some intentional misconduct by the defendant. *Aikens v. Ingram*, 524 F. App'x 873, 879 (4th Cir. 2013) ("[C]ourts have generally clarified that equitable estoppel requires the defendant's wrongdoing, while equitable tolling does not.") (citations omitted); *see also English*, 828 F.2d at 1049. But, "'[m]isconduct' in this sense does not necessarily require a showing of deliberate,

wrongful action by the defendant designed to frustrate the plaintiff's ability to file timely." *Roberts v. Am. Neighborhood Mort. Acceptance Co.*, Civil No. JKB-17-0157, 2017 WL 3917011, at *5 (D. Md. Sept. 6, 2017). As noted, it may be sufficient if the defendant should have realized the effect of its conduct.

To support their respective positions, both parties rely on *Blount v. Shalala*, 32 F. Supp. 2d 339 (D. Md. 1999). In *Blount*, the United States Department of Health and Human Services ("HHS") moved to dismiss the plaintiff's Title VII complaint for untimeliness on the basis that the plaintiff filed her administrative complaint one calendar day later than the 15-day limitation. 32 F. Supp. 2d at 341. The plaintiff alleged that, "on April 23, 1996—the last day for her to file a timely complaint—she met with HHS's [Equal Employment Opportunity] Director, who informed her that HHS needed three more days to set up a meeting with her supervisors to discuss possible settlement of the case." *Id.* at 341-42. Consequently, the plaintiff did not file her complaint until "she became aware that her case would not settle." *Id.* at 342.

The court (Messitte, J.) rejected the plaintiff's argument that HHS should be equitably estopped from asserting the untimeliness defense because the parties were engaged in settlement talks. It reasoned: "Settlement discussions alone do not constitute affirmative misconduct intended to lull a claimant into inaction; there must be evidence of an affirmative promise to settle or evidence of efforts on the part of the agency to prevent the claimant from filing her complaint." *Id.* at 342.

Notably, the plaintiff in *Blount* "provide[d] no explanation as to why she could not have timely filed her complaint at the same time she was pursuing settlement discussions." *Id.* Nor did the record suggest that HHS "'deceitfully lured the plaintiff into settlement discussions, or that it attempted in any way to cause the plaintiff to miss'" the filing deadline. *Id.* at 342

(citation omitted). *See also Wagner v. Sperry Univac*, 458 F. Supp. 505, 516 (E.D. Pa. 1978) ("A litigant may not . . . avoid the statute of limitations simply because the decision it forces him to make—whether to pursue legal remedies before all avenues of informal settlement are exhausted—is a difficult one."), *aff'd*, 624 F.2d 1092 (3d Cir. 1980).

Both parties also cite *Roberts v. American Neighborhood Mortgage Acceptance Co.*, Civil No. JKB-17-0157, 2017 WL 3917011, at *6 (D. Md. Sept. 6, 2017), an employment discrimination case. There, Judge Bredar found that equitable estoppel prevented the defendant from asserting the ninety-day limitation. In *Roberts*, the defendant required the plaintiff to sign a contract with a mandatory arbitration clause, which required the parties to resolve all disputes through binding arbitration with a specified arbitration association prior to initiating a lawsuit. 2017 WL 3917011, at *1. The plaintiff later filed a discrimination charge with the EEOC, which issued a notice of right to sue. *Id.*

Over the ensuing months, the plaintiff made numerous efforts to contact the defendant and to initiate arbitration, in accordance with the mandatory arbitration clause. *Id.* at *1-2. The defendant, however, entirely failed to respond to the plaintiff or the arbitration association. *Id.* at *2. Finally, several weeks after the expiration of the ninety-day filing deadline, the plaintiff filed his complaint in federal court. *Id.* The court concluded that the defendant's actions—the inclusion of a mandatory arbitration clause that was "designed to cause a party to that agreement . . . to not file *any* claim in federal court," *id.* at *6, and the defendant's subsequent failure to respond to the plaintiff's efforts at arbitration—constituted misconduct that would reasonably cause the plaintiff to miss the filing deadline. *Id.* at *6-7. The court also reasoned: "Forcing an employee to sign an arbitration agreement that requires disputes to be settled through binding

arbitration, and then not participating in arbitration, is akin to forcing an employee to sign away their right to bring a Title VII claim at all . . . ." *Id.* at *6.

In a case distinguishable from the one *sub judice*, the Fourth Circuit ruled that a claim was not time-barred where a plaintiff delayed filing suit in reliance on the defendant's affirmative promises that the claim would settle outside of court in accordance with internal union procedures. In *Dement v. Richmond, Fredericksburg & Potomac River Co.*, 845 F.2d 451 (4th Cir. 1988), a union "attempted to dissuade [the plaintiffs] from filing the contemplated civil action by affirmatively promising them that the . . . problem could be corrected without the necessity of them going to court . . . ." *Id.* at 456. After the union pushed back its promise of a resolution from December of 1984 until April of 1985, the plaintiffs informed the union of their intention to sue. *Id.* The union representative responded that "he did not blame [the plaintiffs] if [they] did bring legal action, but he felt he could resolve it himself, and would appreciate it if [they] would allow him to continue and do so. . . . [and] further stated he would like to keep it out of court." *Id.*

After remaining in "constant touch" over the next year to check on the union's attempts to resolve the dispute, the plaintiffs filed suit. *Id.* The Fourth Circuit concluded that the plaintiffs' suit was not time-barred, noting that the plaintiffs "[we]re loyal union members who were faced with what may have been to them the distasteful prospect of suing their own union hierarchy in a context in which their own union constitution required the exhaustion of internal union grievance procedures before institution of a civil suit." *Id.* at 461. Thus, in light of the particular relationship between the union and the plaintiffs, the Fourth Circuit determined that "it may well have been reasonable for [the plaintiffs] to rely on the promises which [the union] repeatedly made to them."

Here, plaintiff alleges that his lawyer and defense counsel had a working relationship as a result of a prior, related case, *i.e.*, *Tyndall*. That opposing counsel knew each other professionally is hardly uncommon. But, plaintiff also asserts that, well before the filing deadline, his lawyer and defense counsel had two telephone conversations. And, in one of those conversations, defense counsel asked plaintiff's counsel "not [to] file suit as she was confident the matter could be resolved in mediation." ECF 11, ¶ 47. Thereafter, as plaintiff's own allegations make clear, there was no further interaction between counsel.

Assuming the truth of the defense request to plaintiff to withhold the filing of suit, pending mediation, that request was made once, when there were about 75 of the 90 days left for plaintiff to file a timely suit. Significantly, there is no suggestion by plaintiff that, in that one conversation with defense counsel, the defense asked plaintiff to withhold suit until after the filing deadline. Dean cites no communication with defense counsel on which he relied to delay the filing of suit until after the filing deadline. Nor does plaintiff allege that defendant represented that it would not assert limitations if suit was untimely filed.

Moreover, no mediator was ever selected. No mediation was ever scheduled. In the many days that followed defense counsel's request, defense counsel never even responded to the proposed mediators suggested by plaintiff's attorney. Therefore, there is no basis in fact to support plaintiff's claim that, in failing to file a timely suit, plaintiff reasonably relied on the prior request of defense counsel, asking plaintiff to delay the filing of suit.

Unlike the plaintiffs in *Dement*, Dean has not alleged that counsel for BFC "affirmatively promised" that the instant case would be settled outside of court. Based on the allegations in the Amended Complaint, BFC's counsel merely "indicated a desire to mediate the matter," ECF 11 ¶ 46, and stated that "she was confident the matter *could be* resolved in mediation." *Id.* ¶ 47

(emphasis added).  Although counsel previously worked together on a related case, that is not akin to a union and its members, nor were they bound by union procedures to engage in mediation or arbitration prior to filing suit.  *Cf. Dement*, 845 F.2d at 461 (quoting *King v. New York Telephone Co., Inc.*, 785 F.2d 31, 34-35 (2d Cir. 1986)).

### IV.  Conclusion

Dean alleges that BFC's lawyer asked Dean to forego the filing of suit until the parties gained further insight on whether mediation was possible, and that BFC's request was designed to cause Dean to miss the ninety-day filing deadline.  The allegations do not support a claim of reasonable reliance, much less misconduct.

By plaintiff's own account, counsel had two telephone conversations, well before the filing deadline.  Defense counsel's singular request to withhold filing was made within a few weeks of plaintiff's receipt of the right to sue letter, and long before the expiration of the filing deadline.  Thereafter, there was no further communication between the lawyers.  Despite the limited effort of plaintiff's counsel to follow up as to proposed mediators, defense counsel never even responded.

Plaintiff does not point to any misrepresentations by defense counsel.  There is no claim that defense counsel agreed to toll limitations.  And, the failure of defense counsel to respond to plaintiff's counsel is not conduct that would lull opposing counsel into complacency.  To the contrary, the conduct should have alerted plaintiff's counsel that the clock was ticking.  Dean's lawyer made no apparent attempt before the filing deadline of May 24, 2017, to contact opposing counsel in order to determine whether mediation remained a viable option, or to establish that defense counsel would agree not to raise limitations if suit was untimely filed.

I simply cannot conclude that the allegations state a basis for equitable estoppel.

For the foregoing reasons, I shall GRANT Defendant's Motion (ECF 14). An Order follows.

Dated: September 17, 2018            _____/s/_____
                                            Ellen L. Hollander
                                            United States District Judge